UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IFEANYICHUKWU ABAKPORO,<br><br>   *Plaintiff*,<br><br>  v.<br><br>EXECUTIVE OFFICE FOR UNITED STATES ATTORNEYS,<br><br>   *Defendant*. | Civil Action No. 18-846 (TJK) |

## MEMORANDUM OPINION

Ifeanyichukwu Abakporo, a federal prisoner proceeding pro se and in forma pauperis, sued the Executive Office for United States Attorneys (EOUSA) under the Freedom of Information Act (FOIA), seeking records concerning extensions of the term of the grand jury that indicted him. The Court granted Abakporo's Motion for Summary Judgment in part, by holding that the records he requested were not covered by FOIA's Exemption 3. *See Abakporo v. Exec. Office for United States Attorneys*, No. 18-cv-846 (TJK), 2019 WL 1046661 (D.D.C. Mar. 5, 2019). Since then, EOUSA has identified and produced all responsive records to him. Because Abakporo has now received all to which he is entitled, the Court will grant EOUSA's Renewed Motion for Summary Judgment.

**I. Background**

  **A. Abakporo's Complaint, His Motion for Summary Judgment, and the Court's Opinion**

According to Abakporo's complaint, several years after he was convicted of mortgage fraud in the Southern District of New York, he learned that the term of the grand jury that

indicted him had been extended several times.[1]  *Id.* at *1.  Believing that the grand jury's term expired before the operative indictment was returned on May 2, 2013, Abakporo submitted a FOIA request to EOUSA seeking "(1) the dates on which the grand jury's term was extended from September 22, 2011, to May 2, 2013, and (2) any court orders effectuating those extensions."  *Id.*  EOUSA claimed that because grand jury materials are generally secret, *see* Fed. R. Crim. P. 6(e), FOIA Exemption 3, 5 U.S.C. § 552(b)(3), categorically exempted them from disclosure.  *Id*.  Abakporo disagreed and sued, and both parties moved for summary judgment.  *Id.*  The Court held that "Abakporo [was] entitled to summary judgment because EOUSA ha[d] not demonstrated that the dates the grand jury's term was extended, or any court orders authorizing those extensions, 'tend to reveal some secret aspect of the grand jury's investigation' so that they are covered by Exemption 3," and denied EOUSA's motion.  *Id.* at *2, *4.  The Court later granted EOUSA's Motion to Alter or Amend the Judgment to reflect that its grant of summary judgment in Abakporo's favor was only partial, *see* ECF No. 35, to allow EOUSA the opportunity to search for responsive records and "to assert—consistent with the Court's Memorandum Opinion, ECF No. 30—other bases on which they might be withheld," *id.* at 2.

      **B.**    **EOUSA's Search, Production of Records to Abakporo, and Renewed Motion for Summary Judgment**

As ordered by this Court, *see* ECF Nos. 29, 35; *see also* Minute Order of July 1, 2019, EOUSA then searched for responsive records.  ECF No. 52-1 ("Hudgins Decl.") ¶¶ 5–6.  EOUSA determined that responsive records likely would have been found in two places—the United States District Court for the Southern District of New York (the "District Court") and the

---

[1] The Court assumes familiarity with this portion of the procedural history of the case, as detailed in its prior opinion.

United States Attorney's Office for the Southern District of New York (the "U.S. Attorney's Office")—so it had the U.S. Attorney's Office check both. *See id.* ¶¶ 5–12. The orders extending the relevant grand jury's term were apparently held under seal by the District Court. *Id.* ¶ 7. After obtaining the orders along with an order unsealing them, EOUSA determined that it could produce them to Abakporo in full. *Id*. ¶¶ 7–9, 13. On top of that, even though it was "not customary [for the U.S. Attorney's Office] to maintain notes or other documentation related to grand jury dates," *id*. ¶ 12, its staff checked its own case records anyway, *id*. ¶¶ 10–12. Specifically, its staff retrieved all 37 boxes of records related to Abakporo's case stored at the Federal Records Center and reviewed each page; the staff located no additional responsive records. *Id.* ¶ 12. And, after three unsuccessful attempts to mail responsive records to Abakporo, *see generally id*. ¶¶ 14–20, EOUSA's counsel arranged for the delivery of these records to Abakporo where he was detained at that time, *see id*. ¶ 21. Abakporo acknowledged receipt of the records. *Id*. ¶ 22; *see also* ECF No. 52-2.

Claiming that Abakporo had now received all responsive records, EOUSA moved once again for summary judgment. *See generally* ECF No. 52. The Court then issued an order advising Abakporo of his obligations under the Federal Rules of Civil Procedure and this Court's Local Civil Rules to respond to the motion. *See* ECF No. 53. That order specifically warned Abakporo that, if he did not respond by December 27, 2019, the Court would treat EOUSA's motion as conceded and, if warranted, enter judgment in its favor. *Id.* at 1, 3. It also warned Abakporo that "on a motion for summary judgment, such as that which Defendant has filed here, any factual assertion in Defendant's affidavits will be accepted as being true unless he submits his own affidavits or other documentary evidence contradicting the assertion." *Id.* at 2 (cleaned up). On Abakporo's motion, ECF No. 54, the Court extended the deadline to oppose by about

two months.  Minute Order of Dec. 30, 2019.  Additionally, given Abakporo's representation that he had not received EOUSA's motion, ECF No. 54 ¶¶ 1–3, the Court instructed the Clerk's Office to mail a copy of the motion to his address of record.  *Id.*

Despite the opportunity provided "to properly address [EOUSA's] assertion[s] of fact," Fed. R. Civ. P. 56(e), Abakporo has not opposed or otherwise responded to EOUSA's motion.  Thus, the assertions set forth in its Statement of Undisputed Facts and supporting declaration remain undisputed.  *See* Fed. R. Civ. P. 56(e)(2) (authorizing court, when non-moving party "fails to properly address another party's assertion of fact as required by Rule 56(c)," to "consider the fact undisputed for purposes of the motion"); LCvR 7(h)(1) ("In determining a motion for summary judgment, the Court may assume that facts identified by the moving party in its statement of material facts are admitted, unless such a fact is controverted in the statement of genuine issues filed in opposition to the motion.").

## II.     Legal Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Courts may not grant a motion for summary judgment as conceded for want of opposition.  *Winston & Strawn, LLP v. McLean*, 843 F.3d 503, 505 (D.C. Cir. 2016).  Rather, they must independently determine whether the moving party has carried its burden.  *Id.* at 507. ("[J]udgment is granted only after the District Court satisfies itself that the record and any undisputed material facts justify granting summary judgment.").  "The burden that the movant 'always bears' is that of 'informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact.'"  *Grimes v. District of Columbia*, 794 F.3d 83, 93–94 (D.C. Cir. 2015) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

**III.     Analysis**

To satisfy its FOIA obligations, an agency needs to show "both that it adequately searched for responsive records and that it turned over all such records not subject to a specific exemption." *Powell v. Internal Revenue Serv.*, 255 F. Supp. 3d 33, 43 (D.D.C. 2017). "[T]he vast majority of FOIA cases can be resolved on summary judgment." *Brayton v. Office of the U.S. Trade Rep.*, 641 F.3d 521, 527 (D.C. Cir. 2011). An agency may rely on affidavits or declarations so long as they are sufficiently detailed. *See Iturralde v. Comptroller of Currency*, 315 F.3d 311, 313–14 (D.C. Cir. 2003) (noting that an affidavit about a search must be "reasonably detailed . . . setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials were searched" (cleaned up)); *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981) (observing that an affidavit regarding disclosure suffices if it "describe[s] the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate[s] that the information withheld logically falls within the claimed exemption, and [is] not controverted by either contrary evidence in the record nor by evidence of agency bad faith.").

With respect to its search, an agency "fulfills its obligations under FOIA if it can demonstrate beyond material doubt that its search was reasonably calculated to uncover all relevant documents." *Ancient Coin Collectors Guild v. U.S. Dep't of State*, 641 F.3d 504, 514 (D.C. Cir. 2011) (citation and internal quotation marks omitted). The agency may submit affidavits or declarations to explain the method and scope of its search, *see Perry v. Block*, 684 F.2d 121, 127 (D.C. Cir. 1982), which are "accorded a presumption of good faith, [and] cannot be rebutted by purely speculative claims about the existence and discoverability of other documents," *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (citation and internal quotation marks omitted).

Because the U.S. Attorney's Office prosecuted Abakporo's criminal case, EOUSA's declarant explains, records responsive to Plaintiff's FOIA request likely would be found there. Hudgins Decl. ¶ 6.  As discussed above, EOUSA located 37 boxes of potentially responsive documents, which it retrieved from storage and reviewed page-by-page.  *Id.* ¶ 12.  Even though EOUSA was required only to search its own records, *see Burka v. U.S. Dep't of Health & Human Servs.*, 87 F.3d 508, 515 (D.C. Cir. 1996), the U.S. Attorney's Office staff obtained from the District Court the specific grand jury records of interest to Abakporo: court orders that presumably reflect the dates the grand juries were extended.  EOUSA has shown with sufficient detail that it "made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested."  *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990), *superseded by statute on other grounds*, Electronic FOIA Amendments, Pub. L. No. 104-231, § 8(c), 110 Stat. 3048, 3052 (1996).  No more is required.  *See id.*

As for disclosure, "FOIA claims are premised on an agency's improper withholding of records." *Rush v. FBI*, 646 F. Supp. 2d 50, 51 (D.D.C. 2009).  So once the agency discloses all the records, there is nothing left for the Court to do. *See Kissinger v. Reporters Comm. for Freedom of the Press*, 445 U.S. 136, 150 (1980) ("Under 5 U.S.C. § 552(a)(4)(B) federal jurisdiction is dependent upon a showing that an agency has (1) 'improperly'; (2) 'withheld'; (3) 'agency records.'"); *Judicial Watch, Inc. v. U.S. Secret Serv.*, 579 F. Supp. 2d 143, 148 n.5 (D.D.C. 2008) (explaining that a controversy remains after production only when a plaintiff challenges an agency's underlying policy).  EOUSA has represented that it disclosed in full all

the records Abakporo requested, and Abakporo has not raised a genuine issue to the contrary.[2] Indeed, Abakporo acknowledged in writing that he received the responsive documents. ECF No. 52-2; *see also* ECF No. 51.

*     *     *

EOUSA has now satisfied its obligations under FOIA to search for and disclose all responsive records. Thus, it is entitled to judgment as a matter of law. *See, e.g.*, *Smith v. U.S. Dep't of Justice*, 987 F. Supp. 2d 43, 48 (D.D.C. 2013).

### IV.   Conclusion

For all these reasons, the Court will grant EOUSA's Renewed Motion for Summary Judgment. A separate order will issue.

/s/ Timothy J. Kelly<br>
TIMOTHY J. KELLY<br>
United States District Judge

Date: August 11, 2020

---

[2] Abakporo did not oppose EOUSA's motion for summary judgment, but he did challenge the authenticity of the documents he received. *See* ECF No. 51. In a status report filed before EOUSA moved, Abakporo noted that the documents lacked markings reflecting that they were authentic, and he asserts he was unable to confirm their authenticity through his own efforts. *Id.* at 1 (observing, among other things, that the records did not have "court stamps, vault numbers nor any authenticating indicia to confirm that they and the information they contain are records kept in the usual form required of all sealed Court records" (cleaned up)). For that reason, he explained, it would "be naïve for anyone to accept these as responsive," and he rejected them as unresponsive. *Id.* at 2. The problem for Abakporo is that "it is well established that questions about the authenticity and correctness of the released records are beyond the scope of the Court's FOIA jurisdiction." *Hedrick v. FBI*, 216 F. Supp. 3d 84, 95 (D.D.C. 2016) (citation and internal quotation marks omitted). Thus, these allegations do not affect whether summary judgment is warranted for EOUSA.